New Bedford Standard-Times Publishing Company
*vs.* Clerk of the Third District Court of Bristol &
another.[1]

Bristol. November 9, 1978. — March 5, 1979.

Present: Hennessey, C.J., Quirico, Braucher, Kaplan, Wilkins, Liacos,
& Abrams, JJ.

*Constitutional Law,* Separation of powers, Judiciary. *Judiciary. Privacy. Public Record. Criminal Offender Record Information.*

The provisions of St. 1977, c. 841, which prohibit public access to the
alphabetical index of criminal defendants kept by a court, do not
violate the separation of powers required by art. 30 of the Massachusetts Declaration of Rights. [410-412] Abrams, J, with whom
Quirico and Liacos, JJ., joined, concurring.

The provisions of St. 1977, c. 841, which prohibit public access to the
alphabetical index of criminal defendants kept by a court, are a
reasonable means of protecting individual privacy and do not
abridge freedom of the press under either the State or Federal
Constitution. [412-415] Abrams, J., with whom Quirico and Liacos,
JJ., joined, concurring.

Civil action commenced in the Superior Court on September 21, 1977.

The case was heard by *Hallisey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Jonathan Brant*, Assistant Attorney General, for the
presiding justice of the Third District Court of Bristol.

*David A. McLaughlin* for the clerk of the Third District
Court of Bristol.

*William H. Carey* for the plaintiff.

*James C. Heigham*, for Massachusetts Newspaper Publishers Association, amicus curiae, submitted a brief.

---

[1] Presiding justice, Third District Court of Bristol.

*Judith Karp Wallis*, for Security and Privacy Council, amicus curiae, submitted a brief.

*Raymond J. Kenney, Jr.*, for the Massachusetts Bar Association, amicus curiae, submitted a brief.

BRAUCHER, J. The Third District Court of Bristol (District Court), like many other courts, indexes criminal records chronologically in a daily docket book and alphabetically in a card index of criminal defendants. Pursuant to the Criminal Offender Record Information (CORI) Act, G. L. c. 6, § 172, as amended through St. 1977, c. 841, the chronological index is kept open to the public, but the alphabetical index is not. The plaintiff, a newspaper publisher, challenges the constitutionality of the statute and seeks access to the alphabetical card index. We hold that there has been no violation of the plaintiff's rights either with respect to the separation of powers or with respect to the freedom of the press, and we order the entry of a judgment declaring the rights of the parties.

The plaintiff filed its complaint in September, 1977, seeking a declaration that the alphabetical index is not CORI and an injunction ordering the defendants, the clerk and the presiding justice of the District Court, to permit the inspection of the alphabetical index or to provide an equally convenient and practicable method of access to the criminal dockets. The controversy was affected by the amendments of G. L. c. 6, §§ 167 and 172, by St. 1977, c. 691, effective October 29, 1977, and St. 1977, c. 841, effective December 23, 1977, but the constitutional issues remained. The case was submitted on stipulated facts, and a judge of the Superior Court made findings, rulings, and an order for judgment. Judgment was entered February 23, 1978, declaring that the alphabetical index is not CORI, that the defendants' refusal to permit inspection of that index is illegal, and that the legislation purporting to prevent public inspection is unconstitutional as a breach of the separation of powers set forth in art. 30 of the Massachusetts Declaration of Rights. The judgment

ordered the defendants to make the index available to the plaintiff for inspection and copying. The defendants appealed, and we allowed their application for direct appellate review.

We summarize the stipulated facts. Documents in criminal cases are filed in numerical order by docket numbers assigned when the complaints are filed. The documents and the chronological lists of docket numbers in daily docket books are available for public inspection. The clerk also maintains an alphabetical card index, with a card for each defendant. Each card gives the defendant's name and date of birth and lists docket number, date, offense, and disposition for each case against the defendant in the District Court. The reverse side of the card lists other information such as social security number, birthplace, physical description, and residence. The alphabetical card index is used by the clerk's office in scheduling cases for trial and in determining such matters as whether a second offense is involved. The alphabetical index is not open to the public, and the staff will not supply docket numbers for named individuals.

In August, 1977, the plaintiff sought access to the alphabetical index for the purpose of obtaining the docket numbers of any criminal actions against certain individuals for violation of any city or State building, sanitary, or housing codes. The defendants advised the plaintiff that the alphabetical index was not available to the public, because it was CORI as defined in G. L. c. 6, § 167.

1. *The statutes.* The CORI Act, G. L. c. 6, §§ 167-178, was originally enacted by St. 1972, c. 805, § 1. CORI was defined in § 167 in terms of data compiled by "criminal justice agencies," also a defined term.[2] The Act created a

---

[2] "The following words shall, whenever used in this section or in sections one hundred and sixty-eight to one hundred seventy-eight, inclusive, have the following meanings unless the context otherwise requires: 'Criminal justice agencies', those agencies at all levels of government which perform as their principal function, activities relating to (a) crime prevention, including research or the sponsorship

377 Mass. 404                                    407

New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Ct. of Bristol.

Criminal History Systems Board (board), an advisory committee, and a Security and Privacy Council (council). Section 172 restricted dissemination of CORI to "criminal justice agencies" and to "such other individuals and agencies as are authorized access to such records by statute." It seemed clear enough that probation departments were intended to be included among "criminal justice agencies," but it was left in doubt whether court records prepared by clerks of courts were to be treated as CORI. See Rep. A. G. Pub. Doc. No. 12, at 89 (1973).

Related statutes include G. L. c. 66, § 10, providing for public access to "public records," defined in G. L. c. 4, § 7, Twenty-sixth. Those provisions do not apply to court records. *Ottaway Newspapers, Inc.* v. *Appeals Court,* 372 Mass. 539, 545-546 (1977). In addition, the Fair Information Practices Act, G. L. c. 66A, was enacted by St. 1975, c. 776, § 1. It places certain responsibilities on a "holder" maintaining "personal data." "Holder" is defined in terms of an "agency," and "agency" is limited to "the executive branch of the government." G. L. c. 66A, § 1.

On November 1, 1973, the Commissioner of Probation advised the board of a vote of the Committee on Probation on October 30, 1973. The vote construed the CORI Act "to permit the Commissioner of Probation to continue in the general superintendence of the collection of court prosecution data, maintenance of the central file, and dissemination of such data to judicial officers." As to dissemination of criminal history data to agencies outside the judi-

of research; (b) the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders; or (c) the collection, storage, dissemination or usage of criminal offender record information.

" 'Criminal offender record information', records and data compiled by criminal justice agencies for purposes of identifying criminal offenders and of maintaining as to each such offender a summary of arrests, pretrial proceedings, the nature and disposition of criminal charges, sentencing, incarceration, rehabilitation and release. Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or of any consequent proceedings related thereto."

cial branch, however, the Commissioner was directed to comply with the board's regulations. He was also authorized to cooperate with the board by contributing information "insofar as such cooperation is practical and does not substantially interfere with his services to the judicial branch."

In *Opinion of the Justices*, 365 Mass. 639, 645-647 (1974), the opinion was expressed that the creation of an agency in the executive branch to control electronic data processing in all branches, including the judicial branch, would violate art. 30 of the Declaration of Rights. But "judicial participation on a voluntary basis in the sharing of data processing facilities and services" was not precluded, "provided that such participation does not involve internal functioning of the judicial branch." In March, 1976, a "Statement of Understanding" was agreed to by the board, the Committee on Probation, the Commissioner of Probation, and the Executive Secretary of this court in an effort to clarify "the voluntary and cooperative relationship between the Board and the judicial branch."

After this action was begun, the definition of CORI in G. L. c. 6, § 167, was rewritten by St. 1977, c. 691, and § 172 was amended to confer additional responsibilities on the board and the council with respect to the dissemination of CORI.[3] The board then issued its Emergency

_____

[3] Section 167 reads in relevant part as follows: " 'Criminal offender record information', records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release. Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or any consequent proceedings related thereto."

Section 172, as further amended by St. 1977, c. 841, reads in relevant part as follows: "Except as otherwise provided in sections one hundred and seventy-three to one hundred and seventy-five, inclusive, criminal offender record information, and where present, evaluative information, shall be disseminated, whether directly or through any intermediary, only to (a) criminal justice agencies; (b) such other agencies

Regulation 1.1 (c), excluding from CORI "court records indexed chronologically or by docket number where no defendant based or similar index is available to the public," and a new Regulation 1.85 permitting dissemination of CORI in the course of public criminal proceedings, "where such disclosure is limited to that necessary to carry on such proceedings effectively."

Finally, St. 1977, c. 841, added the following to G. L. c. 6, § 172: "Notwithstanding the provisions of this sec-

and individuals required to have access to such information by statute including United States Armed Forces recruiting offices for the purpose of determining whether a person enlisting has been convicted of a felony as set forth in Title 10, section 504 of the United States Code; and (c) any other agencies and individuals where it has been determined that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy. The extent of such access shall be limited to that necessary for the actual performance of the criminal justice duties of criminal justice agencies under clause (*a*); to that necessary for the actual performance of the statutory duties of agencies and individuals granted access under clause (*b*); and to that necessary for the actual performance of the actions or duties sustaining the public interest as to agencies or individuals granted access under clause (*c*). . . .

"No agency or individual shall have access to criminal offender record information under clause (*c*), unless a majority of the board, and a majority of the council, each voting as a separate body, determines and certifies that the public interest in disseminating such information to such party clearly outweighs the interest in security and privacy. The extent of access to such information under clause (*c*) shall be determined by majority vote of persons comprising the membership of the board and the council voting as a single group at a duly scheduled board meeting. Certification for access under clause (*c*) may be either access to information relating to a specific identifiable individual, or individuals, on a single occasion; or a general grant of access for a specified period of time not to exceed two years. . . .

". . . Notwithstanding the provisions of this section or chapter sixty-six A, the following shall be public records: (1) police daily logs, arrest registers, or other similar records compiled chronologically, provided that no alphabetical arrestee, suspect, or similar index is available to the public, directly or indirectly; (2) chronologically maintained court records of public judicial proceedings, provided that no alphabetical or similar index of criminal defendants is available to the public, directly or indirectly; and (3) published records of public court or administrative proceedings, and of public judicial administrative or legislative proceedings."

410                                              377 Mass. 404

New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Ct. of Bristol.

tion or chapter sixty-six A, the following shall be public records: . . . (2) chronologically maintained court records of public judicial proceedings, provided that no alphabetical or similar index of criminal defendants is available to the public, directly or indirectly; . . . ." All the parties treat that provision as a clear legislative direction that the alphabetical index in issue in the present action not be made available to the public. They argue only the constitutionality of that provision, and we confine our consideration to the issues so argued.

2. *Separation of powers.* Article 30 of the Declaration of Rights is more explicit than the Federal Constitution in calling for the separation of the powers of the three branches of government, and we have insisted on scrupulous observance of its limitations. The essence of what cannot be tolerated is the creation of interference by one department with the power of another department. *Opinion of the Justices*, 365 Mass. 639, 640-642 (1974). See *Opinion of the Justices*, 375 Mass. 795, 813-814 (1978); *Opinion of the Justices*, 372 Mass. 833, 892-894 (1977).

Judicial proceedings are subject to the "general principle of publicity," but a number of statutes limit access to court proceedings and records, and judges may exercise discretion to impose reasonable cloture, including impoundment, in other cases. *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 546 (1977). See *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 597-599 (1978); *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 648-652 (1978); *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. 475, 479-481 (1978). Unless there is a violation of a constitutional guaranty, the Legislature may modify or abrogate common law practices under Part II, c. 6, art. 6, of the Massachusetts Constitution. *Commonwealth* v. *Jackson*, 369 Mass. 904, 920-923 (1976). *Pinnick* v. *Cleary*, 360 Mass. 1, 11-12 (1971). Examples of the legislation restricting access to judicial records are G. L. c. 94C, § 34 (sealing of records of first offenders under the Controlled Substances

Act); G. L. c. 210, § 5C (sealing of adoption records); G. L. c. 221, § 27A (destruction of obsolete records); G. L. c. 276, §§ 100A, 100B, 100C (sealing of certain probation files and corresponding court records).

Legislation restricting the use of judicial records by the judicial branch of government, so far as it interferes with the internal functioning of the judicial branch, may violate art. 30. See *Opinion of the Justices,* 365 Mass. 639, 647 (1974). A court must keep records in order to function. Legislation prohibiting the keeping of records would doubtless be unconstitutional. See *Houston* v. *Williams,* 13 Cal. 24, 28 (1859). When the volume of cases is substantial, indexing becomes essential, and the Legislature has recognized the need for alphabetical indices. E.g., G. L. c. 215, § 37 (register of probate); G. L. c. 216, § 11 (register of insolvency); G. L. c. 221, § 23 (court clerks). Cf. Mass. R. Civ. P. 79 (b), 365 Mass. 839 (1974) ("suitable" indices of civil docket).

The present case, however, does not involve the internal functioning of the judicial branch. It is concerned instead with dissemination to persons outside the judicial branch. In other jurisdictions legislation regulating public access to court records has been upheld against attack based on the separation of powers. *Sadler* v. *Oregon State Bar,* 275 Or. 279, 295 (1976) (mandated disclosure of record of bar disciplinary proceeding). *Underwood* v. *State,* 529 S.W.2d 45, 47 (Tenn. 1975) (expungement after successful defense of criminal charge). Cf. *Johnson* v. *State,* 336 So. 2d 93, 95 (Fla. 1976) (expungement statute limited in effect to sealing of record); *Times-Call Publishing Co.* v. *Wingfield,* 159 Colo. 172, 177 (1966) (restriction construed to be subject to judicial discretion). In *Nixon* v. *Warner Communications, Inc.,* 435 U.S. 589, 602-608 (1978), the Court, on its own motion and without discussion of separation of powers, deferred to legislative and executive judgment in balancing the presumption in favor of public access to judicial records against their use "to gratify private spite or promote public scandal," quoting from *In re Caswell,* 18 R.I. 835, 836 (1893).

There is no showing here that the denial of public access impairs the ability of the District Court to function. We have recognized "that the sealed records statute serves a useful rehabilitative purpose in providing a mechanism whereby the fact of a prior conviction is, in most instances, shielded from public view." *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. 475, 479 (1978). As will appear, the CORI Act serves similar purposes. If, apart from the denial of public access, the Act or the regulations of the board under it interfere impermissibly with the internal functioning of the court, that is not a matter of which the plaintiff can complain. There is no violation of the separation of powers affecting the plaintiff's rights.

Apart from the internal functioning of the courts, there may be inherent judicial power to regulate the dissemination of information about judicial proceedings. The present case shows no conflict between legislation or administrative regulation, on the one hand, and any judicial rule or order, on the other. We therefore do not consider further the scope or effect of such a judicial power.

3. *Freedom of the press.* We are not here concerned with an attempt to punish a newspaper for publishing information, or to restrain it from publishing information it has already acquired. See *Landmark Communications, Inc.* v. *Virginia*, 435 U.S. 829, 839-842 (1978). Rather we consider how far a State is required to go in assisting the press or others to gather information. "The cases suggest that the State must afford 'some protection for seeking out the news,' but the dimensions of the obligation are as yet unclear." *Ottaway Newspapers, Inc.* v. *Appeals Court*, 372 Mass. 539, 548 (1977), quoting from *Branzburg* v. *Hayes*, 408 U.S. 665, 681 (1972). "The First Amendment generally grants the press no right to information about a trial superior to that of the general public." *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 609 (1978). See *Houchins* v. *KQED, Inc.*, 438 U.S. 1, 7, 10 (1978); *Estate of Hearst*, 67 Cal. App. 3d 777, 785-786 (1977). In

the *Nixon* case, tape recordings had been played for jurors and the public at a criminal trial, and transcripts had been furnished, but broadcasters were denied permission to copy, broadcast, and sell to the public the tapes in the custody of the court.

We need not enter the much disputed question to what extent judicial proceedings may be closed to press and public in the interest of fair trial. See *Gannett Co.* v. *DePasquale*, 43 N.Y.2d 370, 377 (1977), cert. granted, 435 U.S. 1006 (1978); *Philadelphia Newspapers, Inc.* v. *Jerome*, 478 Pa. 484, 499-504 (1978), appeal docketed, No. 78-155 (July 27, 1978); Note, Trial Secrecy and the First Amendment Right of Public Access to Judicial Proceedings, 91 Harv. L. Rev. 1899 (1978). The conflict here is between the individual's interest in privacy and confidentiality and the public's access to records of past criminal proceedings. We are to decide whether the Legislature, in aid of the legislative design, could constitutionally limit public access to the alphabetical index.

The CORI Act is part of a program to establish data processing and data communication systems needed for the efficient administration and operation of criminal justice agencies, to connect such systems with similar systems in this or other States, and to resolve questions of individual privacy and system security in connection with the operation of those systems. See G. L. c. 6, §§ 168, 170. The Supreme Court has taken note of "the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files," including information required for "the enforcement of the criminal laws." The Court has indicated that "a concomitant statutory or regulatory duty to avoid unwarranted disclosures" is typical and in some circumstances "arguably has its roots in the Constitution" and may "evidence a proper concern with, and protection of, the individual's interest in privacy." *Whalen* v. *Roe*, 429 U.S. 589, 605 (1977). That concern may in our opinion properly extend to information stored

manually as well as to computerized information. Cf. *Eugene Cervi & Co.* v. *Russell*, 184 Colo. 282, 286-287 (1974) (vital statistics sought for commercial purposes); *McMullan* v. *Wohlgemuth*, 453 Pa. 147, 162-166 (1973), appeal dismissed for want of a substantial Federal question, 415 U.S. 970 (1974) (names of recipients of public assistance).

The plaintiff contends that the purpose and practical effect of the denial of public access to the alphabetical index is to deny effective access to the records maintained chronologically, which the statute declares to be "public records." To some extent this is undoubtedly true, although the plaintiff concedes that there is "fairly easy public access to information concerning pending prosecutions through the docket books as well as through physical presence in the courtroom." The plaintiff concedes further that many of the records in question could constitutionally be impounded or sealed, but argues that, so long as they are public, access to them cannot properly be made difficult and expensive.

The defendants, joined by the Security and Privacy Council as a friend of the court, counter by referring to the statutory protection against "unreasonable, substantial or serious" invasions of privacy. G. L. c. 214, § 1B. See *Attorney Gen.* v. *School Comm. of Northampton*, 375 Mass. 127, 129-132 (1978). The public interest in overseeing the integrity of the judicial process is clear while court proceedings are pending, they say, but the utility of the glare of publicity fades after the termination of the proceedings. See *Briscoe* v. *Reader's Digest Ass'n*, 4 Cal. 3d 529, 537 (1971). After their termination the interest of the individual in privacy weighs more heavily in the balance, particularly if he was not convicted. In cases of conviction that interest is reinforced by the public interest in rehabilitation. It is appropriate, the argument continues, that as the proceedings become less newsworthy they also become less accessible through the chronological records. Cf. G. L. c. 93, § 52(*a*)(5) (stale criminal records in consumer reports); G. L. c. 233, § 21 (impeachment

of witness by stale criminal record). In cases where the public interest in dissemination clearly outweighs the interest in security and privacy, the CORI Act allows the information to be disseminated. G. L. c. 6, § 172 (c).

It is clear enough that most court records do not aggregate information concerning the criminal history of an individual, and therefore do not threaten the privacy interests the Act seeks to protect. The alphabetical index, on the other hand, listing offenses charged and dispositions for each individual, provides aggregated information similar to that regulated by the Act. It is therefore appropriately subjected to limitation to reinforce the regulation of CORI. It has not been shown that the limitation in question exceeds permissible limits or invades any constitutional right of the plaintiff.

4. *Disposition.* The judgment of the Superior Court is reversed and the case remanded for the entry of judgment declaring that G. L. c. 6, § 172, so far as it denies the plaintiff access to the alphabetical index records maintained by the defendants, is not unconstitutional either as a violation of the separation of powers required by art. 30 of the Declaration of Rights or as a violation of the freedom of the press under the First Amendment to the Constitution of the United States or under art. 16 of the Declaration of Rights.

*So ordered.*

ABRAMS, J. (concurring, with whom Quirico and Liacos, JJ., join). I concur in the decision by the court but suggest that this court consider further action on this matter. This court has not yet promulgated comprehensive rules concerning public access to court records of current proceedings. Cf. S.J.C. Rule 3:09, as amended, 375 Mass. 856 (1978), Rule Relative to the Disposal of Obsolete and Useless Papers and Records in Court.

It has often been the policy of this court to defer to the Legislature in that sometimes overlapping and undefinable area of power that exists between the two branches of government. While I do not think we should now depart from our past "spirit of mutual cooperation," see *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* 362 Mass. 507, 515 (1972), accord, *State* v. *Clemente,* 166 Conn. 501, 515 (1974); *In re PA 267,* 400 Mich 660, 664 (1977); see Note: The Judiciary and the Rule-Making Power, 23 S.C.L. Rev. 377, 394 (1971), I believe we should take action which would grant some measure of relief in this area.

In the absence of court rules, the Legislature has enacted legislation in aid of the judicial branch, but the fact that the Legislature has acted does not deprive the judicial branch of its power of decision in the area of judicial administration. See *Collins* v. *Godfrey,* 324 Mass. 574, 576 (1949). Accord, *Opinion of the Justices,* 375 Mass. 795, 813-814 (1978); *O'Coin's, Inc.* v. *Treasurer of the County of Worcester,* *supra* at 513; *Opinion of the Justices,* 279 Mass. 607, 611 (1932).

While I recognize the need for a spirit of cooperation, I think some additional comment should be made as to the arguments set forth by the defendants.

First, I think we should reject the argument of the defendant clerk that he has a right to collect information of a personal nature as a part of the alphabetical index which he maintains.[1] See G. L. c. 221, § 23. In my view he has no such right. The information being collected by the clerk in this case is appropriately collected by the probation department and no other. See G. L. c. 276, § 100. I would order the clerk to discontinue this practice forthwith. See also G. L. c. 6, § 177.

---

[1] The defendant clerk's alphabetical index contains on one side of the card the defendant's name, date of birth, the year, docket number, date of complaints, offenses, and judgments. The other side of the card contains the individual's social security number, occupation, date and place of birth, height, weight, color of eyes and hair, complexion, and residential address. Cf. G. L. c. 221, § 23.

377 Mass. 404                                          417

New Bedford Standard-Times Publishing Co. *v.* Clerk of the Third Dist. Ct. of Bristol.

Second, I think we should reject the argument of the Attorney General appearing for the defendants, that the only power courts possess is "that necessary for their very existence." To the extent that this argument is addressed not to this court as a constitutional court and a coequal branch of government but to statutory courts, I assume that the Legislature has the power to abolish every court but this court. However, the Legislature having established statutory courts cannot then unduly interfere with the exercise of the judicial powers by the courts, a term far more encompassing than "mere existence." See *O'Coin's, supra* at 509, 510.

Alternatively, if the argument were addressed to this court's powers, I disagree with it. As one of the three equal branches of the government of this Commonwealth, this court, not the Legislature or the Executive, is accountable for the efficient and fair administration of justice. C. Grau, Judicial Rulemaking: Administration, Access and Accountability 11 (Am. Jud. Soc. [1978]). Thus the powers of this court are plenary with respect to the administration of justice.[2]

Third, greater access to information about the actions of public officers and institutions is increasingly recognized as an essential ingredient of public confidence in government. See Open Meeting Statutes: The Press Fights for the "Right to Know," 75 Harv. L. Rev. 1199, 1201 (1962). The Legislature has responded by enacting numerous provisions, including open meeting laws (G. L. c. 39, §§ 23A-23C; G. L. c. 30A, §§ 11A-11A 1/2; G. L. c. 34, §§ 9F-9G; see *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70 [1978]; *Attorney Gen.* v. *School Comm. of Northampton,* 375 Mass. 127 [1978]), to increase the pub-

---

[2] The view expressed by the assistant attorney general suggests to me that a judge faced with a serious issue of separation of powers as between the judicial branch and the legislative branch should consider taking measures to obtain independent counsel for the judiciary. It is, after all, the Attorney General's statutory obligation to represent the Legislature in such a case. See G. L. c. 231A, § 8.

lic's access to governmental records (see G. L. c. 4, § 7, Twenty-sixth; G. L. c. 66, § 10; *Attorney Gen.* v. *Collector of Lynn, ante* 151, 152 [1979]; *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 817-818 [1978]; *Cunningham* v. *Health Officer of Chelsea,* 7 Mass. App. Ct. 861 [1979])[3] and has required financial disclosure by public officials. G. L. c. 268B.

By contrast CORI enshrouds certain records of proceedings in the judicial branch in secrecy and darkness. The trial judge found that under that statute access to records of past proceedings is possible only by "searching hundreds of thousands of docket entries . . . at tremendous time and expense." Obviously this difficulty is magnified in urban courts where the CORI requirement amounts to a virtual impoundment of records concerning all but the most recent cases.

The public primarily holds the judiciary, not the Executive or the Legislature, accountable for the administration of justice. C. Grau, *supra.* Since CORI impairs public access to court records and undermines confidence in the judiciary and in judicial integrity, we should consider the promulgation of rules permitting meaningful access to court records of pending cases. The CORI restrictions undercut the "general principle of publicity" with respect to judicial proceedings. See *Ottaway Newspapers, Inc.* v. *Appeals Court,* 372 Mass. 539, 546 (1977), quoting from *Commonwealth* v. *Blondin,* 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950).

I suggest consideration of the promulgation of a rule forthwith that the clerk of each court, at least as to all pending cases, shall keep, maintain, and make available for public use an alphabetical list of the names of the parties, which list shall contain a reference, by case number, book, and page, of the records of each such case. See G. L. c. 221, § 23.

---

[3] Apparently most of the information sought in this particular case is publicly available from the health officers of the various cities and towns served by the plaintiff. See G. L. c. 111, § 127B.

With respect to the closed cases, I suggest that we invite comments on what type of rule of court may be necessary to ensure that persons having a rightful interest in the records of those cases may have reasonable access thereto.