# Herald Association, Inc. v. Judicial Conduct Board

[544 A.2d 596]

No. 87-462

Present: **Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed January 22, 1988

*Robert B. Hemley* and *Dennis R. Pearson* of *Gravel and Shea,* Burlington, for Petitioner.

*Carroll, George & Pratt,* Rutland, for Respondent.

*Carl H. Lisman* and *Michael Marks* of *Lisman & Lisman,* Burlington, for Intervenor.

**Dooley, J.** This is a petition for extraordinary relief filed by a Vermont newspaper against the Judicial Conduct Board (Board) to gain access to certain discovery material in the possession of the Board in connection with the case of *In re William C. Hill.* Apparently, substantial discovery, both informal and formal, has gone on in the case before the Board. In early 1987, Justice Hill served extensive requests to produce, and thousands of pages of documents were produced for examination and copying. None of the documents were filed with the Board. However, special counsel, appointed to present the case in support of the complaint, supplemented his response to the motion to produce. This material was sent by mail to counsel for Justice Hill with a copy to Richard Mallary, Chairman of the Judicial Conduct Board, at his business office.

A reporter for the petitioner became aware that the material was being sent to the Judicial Conduct Board and requested access to it. Chairman Mallary indicated that he would not act on the request until it was discussed with the full Board. It was taken up with the Board on October 16, 1987. On that date, the Board ruled that it did not want discovery material in its custody and directed that the discovery materials in Chairman Mallary's possession be returned or disposed of. That ruling led to this ac-

tion for extraordinary relief against the Board. Pending a ruling from this Court, the Board agreed to retain the discovery material to which petitioner seeks access. The parties, however, agreed not to send any further discovery material to the Board, and that agreement is not challenged by petitioner. Nor has the petitioner sought access to the discovery that was never sent to the Board Chairman. The sole issue before the Court is whether the petitioner has a right to access to the discovery materials in the possession of the Board.[1]

The petitioner premises its right to access on four sources: (1) the First and Fourteenth Amendments to the United States Constitution; (2) Article 13 of the Vermont Constitution; (3) the common law; and (4) the Rules of the Supreme Court for Disciplinary Control of Judges (the rules for the Judicial Conduct Board).

Because of the unique nature of this case, we do not reach the broad legal theories advanced by the petitioner. Since aspects of these theories are before this Court in other cases, we express a very narrow holding and leave a discussion and resolution of most of the issues raised by petitioner to another day.

All of the petitioner's arguments rely on one basic premise—that the supplemental responses to the motion to produce in this case were "filed" with the Judicial Conduct Board when they were sent to the chairman and, therefore, became records of the Board. The Board vigorously resists this characterization, insisting that the filing could not occur until the Board ruled on whether to accept the discovery materials. We believe that the Board has the better side of the argument and hold that the discovery materials were not filed. Accordingly, we deny the petition without reaching the broader questions raised by the petitioner.[2]

---

[1] This petition was brought pursuant to V.R.A.P. 21 as a petition for extraordinary relief. Although the petition does not fully comply with the rule because there is no verified allegation of why alternative remedies do not exist, no party has contested jurisdiction or compliance with the rule. Jurisdiction clearly exists under *Herald Ass'n* v. *Ellison,* 138 Vt. 529, 531, 419 A.2d 323, 324-25 (1980). We will treat the procedural defects as waived.

[2] The petitioner appears to accept this consequence of the determination of whether the material was filed with the Board since it agrees that it has no right of access to material not filed. Even if it did not accept this consequence, we would rule in any event that none of its theories give it a right of access to unfiled discovery materials. See *Palm Beach Newspapers, Inc.* v. *Burk,* 504 So. 2d 378 (Fla. 1987).

Both the petitioner and the Board rely on the rules of the Board, as adopted by this Court, to support their position. See Rules of Supreme Court for Disciplinary Control of Judges (1981) [hereinafter JCB Rules]. The petitioner stresses the confidentiality provisions. Under JCB Rule 6(7), "[a]ll papers, files, transcripts and communications" in Board proceedings prior to the "filing of a formal charge shall be confidential." However, once a formal charge is served on a respondent judge, JCB Rule 6(15) states that "the proceedings shall be public." Consistent with this dichotomy, the chairman is required to keep two dockets—one containing complaints and dispositions, whether or not they result in formal charges, which is confidential; and one containing formal charges and dispositions which is "available for inspection as a public record." JCB Rule 6(20)(a) & (b). Because the instant case involves formal charges, the petitioner argues that the effect of all these provisions is that "all papers, files, transcripts and communications" to the Board are public documents.

Petitioner also relies on JCB Rule 8(4) which provides that, "[d]iscovery shall be permitted as provided for in the Rules of Civil Procedure." It argues that this wording adopts by reference the entire body of discovery rules in the Vermont Rules of Civil Procedure, including V.R.C.P. 5(d), which requires all discovery papers to be filed with the court subject to the court's right to direct that discovery not be filed unless specifically ordered or unless the discovery is used in the proceeding. The right of the court to direct that discovery not be filed was added to Rule 5(d) in 1982 to allow courts discretion to respond to serious record storage problems that have arisen in some courts. See Reporter's Notes—1982 Amendment to V.R.C.P. 5. Petitioner argues that Rule 5(d) could have given the Board authority to dispense with filing of deposition material, but only if it acted before the material in question was filed.

■ We believe that petitioner's argument embodies an overly technical and rigid application of the JCB Rules. While the rules are intended to cover most procedural issues that arise, in many respects they represent an outline, without the level of detail of the Vermont Rules of Appellate, Civil or Criminal Procedure.[3] In-

---

[3] There are only eleven separate rules encompassing only thirteen pages. A number of the rules deal with matters other than procedure before the Board. For example, Rule 4 establishes the structure of the Board. Rule 5 deals with temporary suspension by the Supreme Court without recourse to the Board.

deed, they were drafted with the expectation of and authorization for Board-created rules of procedure as a supplement.[4] JCB Rule 6(4). Thus, we do not accept that a general authorization for discovery "as permitted" under V.R.C.P. was also intended to dictate whether or how discovery responses would be filed. Such an interpretation would go well beyond the wording of the rule.

We further reject the petitioner's position that the timing of the Board's action was determinative so that petitioner is entitled to access because the Board ruled after the material was sent to the chairman, rather than before. Although we expressly do not decide this point, we note that V.R.C.P. 5(d) does not specifically require a prior order, so that it might be possible for a court to retroactively dispense with discovery response filing once it determines the volume of such filing. Even if V.R.C.P. 5(d) requires a prior order, it is unrealistic to impose this burden on the Board. The courts of this state are open for business at all times, with professional staff and judges who can deal immediately with filing issues. See, e.g., V.R.C.P. 77. They are routinely issuing pretrial orders to cover scheduling and filing requirements under Rule 5(d).

The Judicial Conduct Board, on the other hand, meets only as business requires and operates with little staff assistance. Rule 6(20)(a) provides that a complaint is filed by delivering or mailing it to the chairman. In practice, the chairman keeps all files at his private business office. Even if the chairman had sufficiently monitored his mail to raise a filing issue with the discovery materials in this case, he had no power to act until the full Board met. This is, in effect, what he did in the present case, since he brought the issue up for a Board ruling as soon as possible and held petitioner's request for access in abeyance until that ruling. The situation is somewhat analogous to that provided in V.R.C.P. 5(e) which allows the judge to "permit the papers to be filed with him" but does not authorize filing with the judge as of right. See also *Zenith Radio Corp.* v. *Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 898 n.59 (E.D. Pa. 1981) (recognizes a distinction between discovery which is physically but not officially within the

---

[4] No rules have been adopted by the Board. There are strong reasons why this Court and the Board should avoid too much detail, as long as there is sufficient guidance and predictability to protect the rights of the parties. See, e.g., Burbank, *Procedural Rulemaking Under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980*, 131 U. Pa. L. Rev. 283, 311-12 (1982).

custody of the court). Here, the "judge" is the full Board who, at the first opportunity, ruled not to permit the filing.

There is no JCB rule that specifically requires discovery responses to be filed. As this case shows, the parties had no clear expectation of whether filing was required or appropriate so that this case involves only a minority of the discovery generated in the underlying JCB action. In the absence of a rule, the Board was entitled to adopt a policy on filing for the case. It did so as soon as it met after responses were sent to the chairman. Its ruling that discovery responses not be filed covered the materials in this case and determined their status. The Board was correct in ordering their return and in denying this petition. See *CBS, Inc.* v. *United States Dist. Court*, 765 F.2d 823, 825-26 (9th Cir. 1985) (proper procedure for improperly filed material was to return it to the party who filed it).

Because of the broad public interest considerations in this case, it is important to emphasize the narrowness of our holding and itemize what is *not* involved in this case. First, it it important that this dispute is about discovery documents. Unlike virtually all other papers filed in a case, discovery materials are not filed in support of or in opposition to specific court action. Instead, discovery responses are filed so that the court can monitor the progress of the case, for security reasons, and as a convenience in case action is sought on the discovery. See 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2001 (1970).

The special status of discovery materials was recognized in *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20 (1984), a case involving litigation between the plaintiff, a spiritual leader of a religious foundation, and a defendant-newspaper that had published numerous expose stories about the plaintiff and the foundation. The defendant obtained a discovery order allowing it access to the identities of the foundation's donors and members, but with the condition that it not publish, disseminate or otherwise disclose the information outside the litigation. The Court upheld the protective condition against defendant's claim that it violated its First Amendment right to use the information it obtained without prior restraint. In reaching this conclusion, the Court noted:

> [P]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, . . . and, in general, they are

conducted in private as a matter of modern practice. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

467 U.S. at 33 (citations and footnotes omitted). The Court also stressed some additional factors: the bounds of relevancy for discovery are very broad; pretrial discovery has significant potential for abuse, including violations of privacy interests of litigants and nonparties; and there is no independent right outside the litigation process to the information sought. See also *Palm Beach Newspapers* v. *Burk*, 504 So. 2d at 384 (press has no constitutional right of access to a deposition in a criminal case; "[t]ransforming the discovery rules into a major vehicle for obtaining information to be published by the press even though the information might be inadmissible, irrelevant, defamatory or prejudicial would subvert the purpose of discovery . . . .").

■ Based on *Seattle Times* and other precedents, courts have generally held that there is no constitutional or common law right to examine discovery materials, whether or not filed. Thus, in *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987), the Court held:

[A]ppellants have no common-law right to examine the discovery materials at issue. There is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents. . . . Nevertheless, this court has observed that private "documents collected during discovery are not 'judicial records'". . . . Thus, . . . appellants' common-law right of access does not extend to information collected through discovery which is not a matter of public record.

. . . [A]ppellants possess no First Amendment rights to the protected information which override the provisions of Fed. R.Civ.P. 26(c). The discovery process, as a "matter of legislative grace," is a statutorily created forum not traditionally open to the public.

(citations omitted). See also *Cipollone* v. *Liggett Gropp, Inc.*, 785 F.2d 1108, 1119-20 (3d Cir. 1986) (First Amendment considera-

tions not involved in a protective order). But see *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 6-7 (1st Cir. 1986) (First Amendment requires that protective orders be issued only for good cause).

*Seattle Times* and the cases thereafter are particularly helpful in interpreting JCB Rule 6(15) that provides that "[a]fter the service of a formal charge upon the [respondent] judge, the proceedings shall be public." We have adopted an openness rule to foster public confidence in the process and the integrity of the judiciary. These considerations do not mandate access to discovery materials. The term "proceedings" in Rule 6(15) should be viewed in relation to components of civil and criminal trials. As *Seattle Times* makes clear, discovery events have not traditionally been viewed as "public components" of a trial or a traditionally public source of information. Thus, discovery events cannot be viewed as essential components of the "proceedings" that Rule 6(15) makes public.[5] Absent specific direction from this Court by rule, it is appropriate to give the Board discretion in this area to define what is public.

A second important factor in this case is that it involves the judicial discipline process and not a civil or criminal trial. As a result, different interests are involved from those found determinative in the Supreme Court precedents. See *First Amendment Coalition v. Judicial Inquiry & Review Board*, 784 F.2d 467 (3d Cir. 1986); see also generally *Mosk v. Superior Court of Los Angeles County*, 25 Cal. 3d 474, 601 P.2d 1030, 159 Cal. Rptr. 494 (1979); *Council on Judicial Complaints v. Maley*, 607 P.2d 1180 (Okla. 1980). Further, the procedure is created by the Vermont Constitution and governed solely by rules of this Court. See Vermont Const. ch. II, § 36; JCB Rules.[6] Thus, the statutes on access to court records do not apply. See 4 V.S.A. §§ 652 (Superior Court), 693 (District Court). Nor does the public records law apply in the face of a scheme adopted by rule of this Court. See 1 V.S.A. § 317(b)(1) (records which *by law* are designated confiden-

---

[5] It is also relevant that most judicial discipline procedures do not allow discovery as of right as are allowed by our rules. See, e.g., *Council on Probate Judicial Conduct re Kinsella*, 193 Conn. 180, 198, 476 A.2d 1041, 1052 (1984). Thus, there is even less reason to see discovery in judicial discipline proceedings as a source of information.

[6] Section 36 of the Constitution gives to the General Assembly the power to establish procedures for discipline of judges. The General Assembly has not, however, exercised that power.

tial).[7] The absence of a governing statute distinguishes this case from *State* v. *Tallman*, 148 Vt. 465, 537 A.2d 422 (1987), where a plurality of this Court held that the district court statute gave the public a right of access to affidavits of probable cause in criminal cases.

Vermont is one of a minority of states that permit public disclosure of judicial conduct proceedings after formal charges are brought against a judge but before any further action is taken. See Sharman & Beque, *Silence Isn't Always Golden: Reassessing Confidentiality in the Judicial Disciplinary Process*, 58 Temp. L.Q. 755, 756 (1985) (19 states allow public disclosure at the formal charge stage). In common with all other states, we hold confidential complaints, and investigations of such complaints, unless they result in formal charges. Denial of public access to this stage protects "judges from the injury which might result from publication of unexamined and unwarranted complaints." *Landmark Communications, Inc.* v. *Virginia*, 435 U.S. 829, 835 (1978).

Our confidentiality provision applies to complaints against a judge, not part of a formal charge, when other formal charges are pending against the judge. Indeed, there may be greater need for confidentiality in such circumstances to allow the judge to defend against the charges that have been brought without being forced to answer in a public forum complaints that have been found groundless by the Board.

The line between public and confidential materials will be difficult, if not impossible, to police where the respondent is given full access to discovery tools to test all aspects of the case against him. See *In re Del Rio*, 400 Mich. 665, 686-87, 256 N.W.2d 727, 735 (1977); *In re Van Susteren*, 82 Wis. 2d 307, 312-13, 262 N.W.2d 133, 136-37 (1978). Respondent's discovery rights should not be chilled by a fear that extraneous matter, properly confidential under our rules, will find its way into the public record through discovery.

We think the Board is acting within its discretion under the JCB Rules to direct that discovery not be filed to prevent inap-

---

[7] It is doubtful that the public records law applies at all to judicial records in view of the specific statutes in the trial courts and the power of the judicial branch over its records. See *Ex parte Farley*, 570 S.W.2d 617, 624 (Ky. 1978); *New Bedford Standard-Times Publishing Co.* v. *Clerk*, 377 Mass. 404, 406-07, 387 N.E.2d 110, 112 (1979); *Sanford* v. *Boston Herald-Traveler Corp.*, 318 Mass. 156, 61 N.E.2d 5 (1945); Reporter's Notes—1984 Amendment to V.R.C.P. 77(e).

propriate disclosure of confidential information. Cf. *Nichols* v. *Gamso*, 35 N.Y.2d 35, 315 N.E.2d 770, 358 N.Y.S.2d 712 (1974). A policy of nonfiling also ensures that Board members, as fact finders, do not have access to inappropriate and inadmissible information. These considerations are either not present or don't have the same force in civil and criminal proceedings.

■ For the foregoing reasons, we hold that in a judicial conduct proceeding, the Judicial Conduct Board may direct that discovery materials not be filed with the Board. Further, it may direct that such discovery already sent to and in the possession of the chairman be returned to the parties. Discovery materials not in the possession of the Board, either because it was never provided to the Board or because it was returned to the parties when the issue was raised, are considered not to have been "filed" with the Board. Accordingly, the public has no right, enforceable in this Court, to access to these materials.

*Petition denied.*

**Mahady, J.,** dissenting. I respectfully dissent from the holding of the majority that there is no public right of access to discovery materials in the possession of the Judicial Conduct Board (Board) under the facts of this case.

Those facts are important. According to her uncontroverted affidavit, petitioner's reporter had over a period of time obtained access to the pleadings and other motions filed with the Board from the legal counsel of the parties. In September of 1987, she became aware of discovery materials which had been provided to the Board. She asked Justice Hill's counsel for access to all discovery materials in the possession of the Board. She was told that counsel had no objection to such access but that counsel was understandably unwilling to go through his own files in order to cull from the files those materials which had been provided to the Board. It was suggested that she examine the actual materials in the Board's possession.

On October 14, 1987, the reporter made a request of the Board for access to these materials. Two days later the Board met. While in executive session the Board decided to return the discovery materials in its possession to counsel and to order that no further discovery materials be provided to the Board. No party to the proceedings had requested such a ruling from the Board.

The Board's action, which this Court today approves, is rather akin to an attempt to put toothpaste back into the tube. Predictably, the result is both messy and unconvincing.

Our Rules clearly provide that "[a]ll papers, files, transcripts and communications in proceedings before the Board before the filing of a formal charge shall be confidential." JCB Rule 6(7). Here, a formal charge has been filed. In such cases, our Rules clearly provide that "[a]fter the service of a formal charge . . . the proceedings shall be public." JCB Rule 6(15).

Making the apparently naive assumption that our Rules mean precisely what they say, the issue is a simple one. The discovery materials are "papers . . . in [a] proceeding before the Board . . . ." A formal charge has been filed. Therefore, the "proceedings shall be public."

However, the majority, at the same time characterizing petitioner's argument as "embod[ying] an overly technical and rigid application of the JCB Rules," determines that the documents were never "filed" with the Board. The verb "to file" means "[t]o place among official records." Webster's Ninth New Collegiate Dictionary, 462. The discovery materials at issue were, in fact, placed among the official records of the Board. They are still there. To say that the documents were not "filed" is to use language in a manner which confounds reality.

While professing to "express a very narrow holding," the majority goes on to broad and dangerous *dicta* which suggest that "there is no constitutional or common law right to examine discovery materials, whether or not filed." This is a matter about which there is no judicial unanimity. See, e.g., *Anderson* v. *Cryovac, Inc.*, 805 F.2d 1 (1st Cir. 1986); *Worrell Newspapers of Indiana, Inc.* v. *Westhafer*, 739 F.2d 1219, 1223 n.4 (7th Cir. 1984); *Tavoulareas* v. *Washington Post Co.*, 737 F.2d 1170, 1172 (D.C. Cir. 1984); see also *Avirgan* v. *Hull*, 118 F.R.D. 252 (D.D.C. 1987) (denying a Rule 26(c) motion for a protective order which would have prohibited the press from attending a deposition). (Moreover, in *Seattle Times Co.* v. *Rhinehart*, 467 U.S. 20 (1984), cited by the majority, "[t]he Supreme Court did not hold that the first amendment was not implicated at all" as to discovery materials. *Anderson* v. *Cryovac, Inc.*, 805 F.2d at 7.)

In any event, the majority, relying upon precedents from civil and criminal cases in the context of this judicial disciplinary proceeding, compares apples to oranges. As the majority itself notes,

an "important factor in this case is that it involves the judicial discipline process and not a civil or criminal trial."

Such proceedings are governed by our own Rules which on their face create a public right to access to documents placed among the official records of the Board after formal charges are filed. Such proceedings are also essential to public confidence in its judiciary. The fact that the Board has gone to such lengths to create secrecy "can only breed ignorance and distrust of [the Board] and suspicion concerning the competence and impartiality of [its proceedings]; free and robust reporting, criticism, and debate can contribute to public understanding of the rule of law and to comprehension of the functioning of the entire [judicial] system, as well as improve the quality of that system by subjecting it to the cleansing effects of exposure and public accountability." *Nebraska Press Association* v. *Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring). " 'Openness . . . enhances both the basic fairness of the [proceeding] and the appearance of fairness so essential to public confidence in the system.' " *State* v. *Tallman*, 148 Vt. 465, 474, 537 A.2d 422, 427 (1987) (quoting *Press-Enterprise Co.* v. *Superior Court of California*, 464 U.S. 501, 508 (1984)).

While it is in no way necessary in this case to reach the constitutional issues, the constitutional guarantee of a free press is clearly, indeed, starkly, in the background. Along with Judge Oakes, "I share with Vincent Blasi* a 'pathological' concern for the first amendment, indeed for the whole Bill of Rights. . . . The truth-seeking function of [a] free [press] remains high on my agenda, as essential to appropriate self-government." Oakes, *Tolerance Theory and the First Amendment*, 85 Mich. L. Rev. 1135, 1150-51 (1987). With sadness, I predict that the "very narrow holding" of today's majority along with its accompanying *dicta* will some day find its way into the constitutional considerations of this Court. Under such circumstances, "my 'pathological' concern gets aroused." *Id.*

---

* Blasi, *Toward a Theory of Prior Restraint: The Central Linkage*, 66 Minn. L. Rev. 11, 30 (1981).