MacDonald, D. Lloyd, J.
Before the Court are plaintiffs motions to compel further discoveiy in connection with what the plaintiff alleges were inadequate answers to his interrogatories and inadequate responses to his request for production of documents.
*311 The dispute joined by these motions provides a vivid illustration of discovery abuse by counsel for both parties by their failure to comply with basic obligations under the rules. The result has been a waste of the Court’s scarce resources as it has had to intervene to decide issues that counsel should have been able to resolve themselves, or — at a minimum — to narrow substantially.
The rules of discovery in all but the narrowest class of cases should be self-executing. As explicitly provided in Superior Court Rule 9C, no motion under either Rule 26 or 37 may be filed without counsel having conferred and made “a good faith effort to narrow areas of disagreement to the fullest extent.” And a 9C conference must not be an empty exercise while counsel posture in their respective client’s alleged interest and then leave for the Court to mop up issues that ought, by any objective measure, to have been resolved between counsel. The latter is exactly the situation presented here.
The Rule 9C obligation to meet and confer to narrow issues is especially important to honor at this juncture of the Superior Court’s institutional effort through its “firm and fair trial” initiative to accelerate the just disposition of cases. The improvement of the court system’s efficiency and timeliness was a central recommendation of the Monan Report and remains a central priority of the Court Management Advisory Board, which was created by the Legislature in response to the Monan Report.
Whatever time is taken by a judge to resolve an unnecessary discovery issue is time taken away from the resolution of issues that truly deserve the Court’s attention. And the result is that the disposition of those worthy disputes is postponed to the detriment not only of the parties before the Court but to the detriment of those thousands of litigants whose cases are waiting in line. And the systemic “dysfunction” of our courts, noted by the Monan Report as to the timely disposition of cases, is perpetuated.
The instant case is a routine personal injury case. Describing it as “routine” is not to depreciate it in any way; rather, it is to recognize it as of the type and order of magnitude that commonly comes before the Court. It is a premises liability claim arising from the plaintiffs alleged injury at the South Attleboro Home Depot store on account of a wooden stairway post allegedly having fallen from a shelf and striking him. Medical and related damages were reported to be $12,280.95 on the Civil Action Cover Sheet.
Discovery Requests at Issue
Interrogatories:
No. 5b: The identity of the person responsible at the store for the types of shelving.
No. 6: “[A]ll policies and/or practices of the defendant between March 24, 2003 [the date of the incident] and the present which relate to how wooden stairway posts are to be displayed and/or shelved at Home Depot stores.”
No. 9: “[A]ll actions taken by Home Depot employees in relation to the shelving, displaying and/or storing of wooden stairway posts at the . . . store after [the accident].”
No. 10: Details of notices of claims for personal injury in any Home Depot store from March 24, 1997 to March 24, 2003.
No. 12: Conversations between Home Depot personnel and the plaintiff.
Document Requests:
No. 8: “Policies and/or practices of the defendant which relate to shelving and/or display of items within Home Depot stores between March 24, 2003 [the date of the accident] and the present.
No. 9: “All blueprints, design drawings, ‘as built’ drawings, diagrams and/or schematics relating to the shelving which has been utilized by Home Depot for display of wooden stairway posts between [the date of the incident] and the present."
No. 10: “All documents which set forth or relate to the need for or presence of barriers placed across shelving at Home Depot stores to prevent items, such as wooden stairway posts, from falling from elevated shelving.”
No. 11: “All documents, letters, memoranda and/or notes which discuss the need for precautions to be taken by Home Depot personnel to prevent objects from falling from elevated shelving at Home Depot stores.”
Defendant’s Position
The defendant responded, apparently by rote, to each of the above with the objection that it was “overly broad, unduly vague and burdensome and, therefore, beyond the scope of [Rules] 26(b) and 33 [or] 34(a).” In addition, more particularized objections were entered, to wit, as to:
Interrogatory No. 5(b) [person responsible for shelving]: “No time frame.”
Int. No. 6 [policies and/or practices relating to the display of posts] and Doc. Request No. 8 [policies and/or practices], No. 9 [blueprints and design drawings re shelves], No. 10 [barriers] and No. 11 [precautions]: “proprietary” and confidential information that would only be disclosed upon the execution of a confidentiality agreement strictly limiting use of the information to the case and requiring that the information be returned upon the case being concluded.
With regard to the alleged proprietary and confidential material, defendant’s counsel submitted for the Court’s in camera review a copy of the policy and procedure document that the defendant was offering to disclose subject to the execution of the confidentiality agreement.
*312 The defendant also objected to the production of any post-incident information or documents on the ground that they were not relevant.
Confidentiality Issue
The defendant described the information that it was withholding subject the execution of a confidentiality agreement as “confidential commercial information, trade secrets and/or propriety information.” At the hearing counsel for the defendant strenuously pressed her client’s conviction that the withheld materials were “proprietary.” Counsel pungently stated that her client “bled orange” over this issue (apparently a reference to the orange logo and image brand of the Home Depot organization).
The document submitted to the Court for in camera review is titled, “Critical Operating Safety Standards.” It is 16 pages and relates to lift equipment, banner barricades, fall protection and ladder use and “Merchandising Safety Standards” for overheads, shopping level and stacked merchandise.
Inasmuch as the defendant conditioned its readiness to produce discovery on the plaintiff s execution of a confidentiality agreement that would substantially restrict the plaintiffs use of the information received, it is necessary for the Court to address the appropriate role of such agreements in the discovery phase of a case.
Confidentiality agreements implicate many of the same interests as do court sanctioned impoundment orders. Rule 1 of Uniform Rules of Impoundment Procedure (Trial Court Rule VIII) defines impoundment as “the act of keeping some or all of the papers, documents, or exhibits, or portions thereof, in a case separate and unavailable for public inspection.” Judge Agnes of this Court, in a case involving a jointly proposed protective order incorporating a confidentiality agreement, described the confidentiality agreement at issue as “the functional equivalent of an order of impoundment.” Converge, LLC v. Hickox, 2001 WL 1692072 (2001) [14 Mass. L. Rptr. 188).[1] I agree.
Thus, in weighing the reasonableness of the defendant’s position here, it is necessary to consider the principles that guide a determination of the appropriateness of impoundment. The SJC described those principles in H.S. Gere & Sons, Inc. v. Frey, 400 Mass. 326, 329 (1987):
“It is within the discretion of a court to impound its files in a case and to deny public inspection of them, and that is often done when justice so requires.” Sartford v. Boston Herald-Traveler Corp., 318 Mass. 156, 158, 61 N.E.2d 5 (1945). See New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 410, 387 N.E.2d 110 (1979); Ottaway Newspapers, Inc., 372 Mass. 539, 546; Mass.R.Civ.P. 26(c), 365 Mass. 772 (1974).
In exercising this discretion, a judge must balance the privacy issues against the “general principle of publicity” which governs judicial proceedings in the Commonwealth. Commonwealth v. Blondin, 324 Mass. 564, 571 (1949), cert. denied, 339 U.S. 984 (1950). New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Court of Bristol 377 Mass. 404, 410 (1979).[2]
Through the balancing process, a judge must determine whether “good cause” to order impoundment exists and must tailor the scope of the impoundment order so that it does not exceed the need for the impoundment. See Ottaway Newspapers, supra at 550, n. 17. See also George W. Prescott Publishing Co. v. Register of Probate for Norfolk County, 395 Mass. 274 (1985).
While the public interest in free access to the record of trial proceedings is greater than that which pertains to the pretrial discovery record, Gere 330-31, the publicity principle applies to the latter, as well. “Only in the most extreme situations, if at all, may a State court constitutionally forbid a newspaper (or anyone else) to report or comment on happenings . . . which have been held in open court; and a similar rule would apply to court files otherwise unrestricted." Ottaway Newspapers, supra at 547-48.
Further by the defendant’s refusal to produce information and documents because the requests are “overly broad, unduly vague and burdensome and, therefore, beyond the scope of [Rules] 26(b) and 33 [or] 34(a)” and because they are “proprietary” and confidential, the Court must exercise its discretion as it would if the issue were posed in the context of a motion for a protective order. And there the Court in the exercise of its sound discretion fashions a remedy to protect the producing party from the risks associated with disclosure of the information or material. The object is to shield the party or person from “annoyance, embarrassment, oppression, or undue burden or expense.” Mass.R.Civ.P. 26(c). The party or person requesting relief must demonstrate “good cause.” Mass.R.Civ.P. 26(c). As stated, the Rule 26(c) exercise is similar to that where the issue is impoundment. See Ottaway, supra at 546 and Gere, supra at 329.
Approaching the defendant’s grounds for discovery with these principles in mind, it is clear to the Court that there is nothing in the document, “Critical Operating Safety Standards,” or in the other information the defendant seeks to make subject to a confidentiality agreement that approaches proprietary or confidential material that deserves protection under Rule 26(c). The document is nothing more than a conventional safety advisory. And the Court fails to see how the plaintiffs requests relating to designs and specifications with respect to shelving systems in the defendant’s stores and to policies and practices with regard to displays could be fairly said to implicate the equivalent of a trade secret, the disclosure of which *313 could place the defendant at a competitive disadvantage.
Rather, it is apparent to the Court that the defendant’s motivation to insist on a confidentiality agreement is more prosaic. It is to limit the dissemination of information in order to reduce access to it by present or future claimants with regard to accidents in the defendants’ other stores who would then seek to leverage it to their advantage.
While the Court is mindful of the abuse which excessive discovery can foment (a routine slip and fall cannot be a fair predicate for unlimited access by counsel to the details of the claims history of a national chain’s hundreds — or thousands — of stores), the fact that information disclosed in one case is shared among the plaintiffs’ bar elsewhere is not a valid reason to restrict discovery. That is because the public has a right to knowledge of potential risks uncovered in the course of judicial proceedings. As stated by Judge Connolly of this Court in a products liability case where he was asked by joint stipulation of counsel to approve a confidentiality agreement and im-poundment order incident to settlement:
Here, such an impoundment order would serve as a secrecy mechanism that conceals information of harmful products or practices from the public and function as a claim avoidance and claim management tool. Private defendants, especially manufacturers, frequently insist upon the use of confidentiality agreements and protective orders as a means of preventing dissemination of such important information, information which reveals the hidden dangers to other potentially affected members of the public. The insistence upon confidentiality agreements is often quid pro quo for the payment of monetary damages in the settlement of a case . . . Without question, the “general principle of publicity” here outweighs any proffered “privacy” reasons.
Gleba v. Daimler Chrysler Corp., 2001 WL 1029678 (Mass. Super. 2001) [13 Mass. L. Rptr. 576).
For the above reasons, the defendant’s blanket assertion of the proprietary and confidential nature of the materials it has withheld from discovery is rejected.
The Court also finds that the plaintiffs requests at issue were in most instances unreasonably overbroad.
In its rulings below, the Court seeks to balance the plaintiffs reasonable discovery needs against the defendant’s entitlement to have its obligations limited in scope to the nature and magnitude of the claim at issue.
Rulings as to Specific Interrogatories and Document Requests
Interrogatories:
No. 5b (The identity of the person responsible at the store for the types of shelving): Defendant shall identify the person or persons who in the two years prior to the accident were involved to any material extent in selecting the types of shelving that existed on the day of the accident from which the wooden post fell that allegedly injured the plaintiff.
No. 6 (“]A]ll policies and/or practices of the defendant between March 24, 2003 lthe date of the incident] and the present which relate to how wooden stairway posts are to be displayed and/or shelved at Home Depot stores”): For the time period March 24, 2003-calendar year 2004 Defendant shall identify and produce (if in written form) policies or routine practices that related to how wooden stairway posts of the kind that allegedly caused injury to the plaintiff were to be displayed or shelved. This covers only company-wide policies in electronically retrievable form and written “practices or policies” in the defendant’s South Attleboro store (whether in electronic or hard copy form). No confidentiality undertaking need be executed with regard to this information.[3]
No. 9 {“[A]ll actions taken by Home Depot employees in relation to the shelving, displaying and/or storing of wooden stairway posts at the . . . store after [the accidentf): Defendant shall identify any changes that were made at the South Attleboro store in the shelving, display or storage of wooden stairway posts of the kind that allegedly caused injury to the plaintiff in the time period March 24, 2003-calen-dar year 2004.
No. 10 {Details of notices ofclaimsfor personal injury from falling objects in any Home Depot store from March 24, 1997 to March 24, 2003): Defendant shall identify such claims allegedly occurring from January 1, 2001 to March 24, 2004 as have been recorded by the entity within the defendant principally responsible for processing claims for personal injuries and maintaining records of the same. “Identify” for these purposes means the (a) name and address of the claimant and of the claimant’s attorney, if any, (b) if suit was filed, the identity of the court and docket number and (c) a capsule description of how the alleged injury occurred, including the location of the store and the location within the store of the accident’s occurrence.
No. 12 (Conversations between Home Depot personnel and the plaintiff): The defendant has represented that no such conversations occurred.
Document Requests:
No. 8 (“Policies and/or practices of the defendant which relate to shelving and/or display of items within Home Depot stores between March 24, 2003 [the date of the accident] and the present): See the Court’s order with regard to Interrogatory No. 6 above. The same order pertains here.
No. 9 (“Ail blueprints, design drawings, ‘as built’ drawings, diagrams and/or schematics relating to *314 the shelving which has been utilized by Home Depot for display of wooden stairway posts between [the date of the incident] and the present’): Defendant shall produce such documents for the time period March 24, 2003-calendar year 2004. No confidentiality undertaking need be executed with regard to this information.
No. 10 (“All documents which set forth or relate to the need for or presence of barriers placed across shelving at Home Depot stores to prevent items, such as wooden stairway posts, from falling from elevated shelving"): Defendant shall produce such documents for the time period March 24, 2003-cal-endar year 2004. No confidentiality undertaking need be executed with regard to this information.
No. 11 (“All documents, letters, memoranda and/or notes which discuss the need for precautions to be taken by Home Depot personnel to prevent objects from falling from elevated shelving at Home Depot stores"): Defendant shall produce any documents concerning either company-wide communications or communications within the South Attleboro store to Home Depot personnel generated from January 1, 2001 to March 24, 2004 as to the need for precautions to be taken by Home Depot personnel to prevent objects from falling from elevated shelving. The company-wide communications covered are only those retrievable in electronic form; the South Attleboro store communications covered include both those that are electronically retrievable and hard copy. Excluded from the production are any communications from the defendant’s attorneys that pertained at the time they were prepared to any pending claim for personal injuries. No confidentiality undertaking need be executed with regard to this information.
The above documents and information shall be produced to the Plaintiff within 21 days of the entry of this order.
Because, as noted above, the Court finds that counsel for both plaintiff and defendant failed to comply reasonably with the discovery obligations incumbent upon them by the Rules of Civil Procedure and the Rules of the Superior Court, the defendant shall pay court costs of $500, and the plaintiff shall pay court costs of $250.
ORDER
Discovery shall be produced as ordered above. Defendant shall pay $500 in court costs. Plaintiff shall pay $250 in court costs. Checks payable to the Commonwealth of Massachusetts shall be delivered to the Bristol County Clerk’s Office in Fall River within 10 days of the entry of this order.

And Judge van Gestel of the Superior Court’s Business Litigation Session has noted the common considerations to be taken into account in the impoundment and protective order contexts: “[S]ome of the principles applicable to issues of impoundment permeate the situation presented by a protective order that has some of the same effects as impoundment, although the confidentiality provisions in an agreement are somewhat less inhibited by the public nature of the court.” Pharmetrics, Inc. v. Source Healthcare Analytics, Inc., Suffolk CA No. 05-4791-BLS1 (8/7/06) [21 Mass. L. Rptr. 526[.

The Gere court quoted Justice Holmes’s formulation of the general principle of publicity and the reasons underlying it:
“It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that eveiy citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." Cowley v. Fdlsifer, 137Mass. 392,394 (1884).
Id. at 330, n. 11.

As to each of the plaintiffs requests relating to information on practices or conditions after the date of the accident, the defendant submitted that all subsequent repairs and practices were barred from discovery, citing, inter alia, Cuddy v. L&M Equipment Co., 352 Mass (1967). However, the rule as to evidence of post-accident repairs applies only to the admissibility of evidence at trial, not to discovery, where the relevance standard is far broader. Mass.R.Civ.P. 26(b)(1). Moreover, even as to admissibility at trial, the rule is subject to well recognized exceptions. See Mark Brodin and Michael Avery, Handbook of Mass. Evidence §4.5, at 178-81 (8th ed. 2007).