Hinkle, J.
Plaintiff in this action, Globe Newspaper Co., sought from defendant district attorneys docket numbers for “municipal corruption” cases defendants had prosecuted in the preceding five years. Defendants did not comply, citing the Criminal Offender Record Information (“CORI”) statute, G.L.c. 6, §§167 et seq., and stating that the requested information could not be compiled without significant cost. Plaintiff then filed this action for declaratory and injunctive relief. The matter is now before the court on the parties’ cross motions for summary judgment.[3] After a hearing, for the reasons discussed below, the plaintiffs motion is ALLOWED, and the defendants’ motions are DENIED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows.
Defendants are all district attorneys for their respective districts. Each is the custodian of the records held by his office.
During the relevant time period, defendants all used an electronic information management system called PROMIS[4] to track cases. Defendants’ staff entered information about cases into PROMIS by typing data into the appropriate “field.” For example, a defendant’s name would be entered into one field, the statutes and offenses charged into others and so forth. Entering the data into fields allowed for computerized searches of particular fields. For example, a search *356 could list all cases involving a particular defendant or cases assigned to a particular assistant district attorney. While there were fields identifying the statute under which a defendant was prosecuted, there was no field identifying a case as one of “municipal corruption.” There was also no field identifying a defendant’s occupation or status as a municipal official or a victim’s occupation or status as a municipality or public body.
The Globe's Request
Plaintiff publishes the Boston Globe (the “Globe”), a daily newspaper. On or about July 31, 1998, Alice Dembner, a reporter for the Globe, sent letters to the Attorney General, to each defendant and to all other district attorneys in the Commonwealth. The text of the letters is identical. In relevant part, the letters state:
Pursuant to the Freedom of Information Act [G.L.c. 4, §7, cl. 26 and c. 66, §10], I hereby request information on cases of municipal corruption prosecuted by your office from 1993 through June 30, 1998. I am interested in cases involving elected or appointed officials or employees of cities and towns. I am NOT interested in cases involving state or county officials or employees.
For each case, I request the docket number, defendant name(s), municipality and charge. This information is public under both [c. 66, §10], and the decisions of Globe Newspaper Co. v. Fenton, 819 F.Sup. 89 (D.Mass. 1993), and Globe Newspaper Co. v. Conte, Suffolk Superior Court No. 95-2743-A (July 28, 1995).
In the event that the search and reproduction fees involved in complying with my request do not exceed the sum of $75,1 would be grateful if you would send me copies of the documents along with your statement of search and copying charges. If the fees exceed $75, please inform me of the total charges in advance of fulfilling my request . . .
Thank you for your cooperation in this matter. I look forward to receiving your response within 10 days.
The Replies
In response to this letter, the Attorney General and the district attorneys for the Northern District and the Cape and the Islands District provided docket numbers and other information. The Attorney General and the district attorney for the Cape and Islands District did so at no cost to the Globe. The district attorney for the Northern District asked his staff what municipal corruption cases they recalled prosecuting during the relevant time, and he provided information from their responses.[5]
District Attorney Conte’s Reply[6]
By letter to Dembner dated August 7, 1998, district attorney Conte stated in relevant part:
For the reasons set forth below, we are unable to comply with this request.
This office maintains its files alphabetically; none of our files are grouped or filed by offender occupation. Therefore, even assuming arguendo that our case files for the years you have specified might contain some document or documents which contain reference to an offender’s occupational status, we would have no way to access this information short of a page-by-page search of each case file which falls within the time frame of your request . . . [W]e estimate your request would require a file-by-file search of at least 200,000 case files. The request is further complicated by the vagueness of your reference to “municipal corruption," not itself a recognized criminal offense in the Commonwealth and a phrase which likely encompasses many different offenses. In addition to these practical obstacles, your request also appears to call for information which may be protected or exempted from disclosure by G.L.c. 6, secs. 167-78B, G.L.c. 4, Sec. 7(26)(f) and work-product and other common law privileges.
If you wish to provide us with the names of the defendants in specific cases and identify which offenses you construe as involving “municipal corruption,” if there are no legal prohibitions, we would be happy to provide you with the information.
By letter dated August 24, 1998, counsel for the Globe, Jonathan Albano, wrote to district attorney Conte on behalf of plaintiff and Dembner. This letter[7] states that the Globe was amending its request “to reference the statutory violations that likely would be involved in prosecutions concerning municipal corruption.”
As amended, the Globe’s request is as follows: documents sufficient to identify docket number, defendant name(s), municipality, charge(s) and outcome(s) in prosecutions of municipal, city or town employees or officials brought by your office from January 1993 to June 30, 1998 and involving alleged violations of the following statutes: (a) ch. 268A (including without limitations §§2 and 3); (b) ch. 55; (c) ch. 266, §§51, 67A, 67B and 67C; (d) ch. 266, §30; (e) ch. 268, §9A[;] (f) c. 149, §§44A-44J; (g) ch. 267, §§1 and 8; and (h) ch. 62C, §73.[8]
The letter references 950 Code Mass. Regs. §32.05(4) and states: “I think it is reasonable to expect that, wholly apart from the actual search of records in your office, you and members of your staff would recall some number of prosecutions of municipal corruption by your office during the past 5 years (assuming that any in fact occurred). I would request that such information be included in the response to my request.” After disagreeing that the CORI statute prohibited release of docket numbers and discussing other legal arguments, the letter requested compliance within ten *357 days, requested waiver of any fees or presentation of a “written, good faith estimate” of any fees.
By letter dated September 1, 1998, district attorney Conte stated that, despite the Globe’s narrowing of its request by providing specific statute citations, which would reduce the work required for compliance, that compliance would still require review of each file. “Recollections” of staff members “would plainly be beyond the scope of information contemplated by G.L.c. 4, Sec. 7(26) and G.L.c. 66, Sec. 10.” In the opinion of the district attorney, the estimated cost of compliance would likely be substantial: perhaps 5,000 hours billed at $40 per hour. District attorney Conte’s policy "is to require a substantial advance payment prior to commencing such vast undertakings.” The letter concluded by suggesting that a search of District Court card catalogs would be simpler for the Globe.
District Attorney Martin’s Reply
By letter dated August 18, 1998, district attorney Martin stated that Dembner’s request “would require a hand search of every case for the last five years” at a substantial cost. The letter states that the CORI statute prohibits disclosure. A letter from Attorney Albano, similar in substance to the one sent to district attorney Conte, followed on August 24, 1998. By letter dated September 8, 1998, district attorney Martin provided an estimate of the cost required to comply with plaintiffs request. The estimate included a cost of about $1,125 to write a computer program to conduct a search and about $80,000 (exclusive of copying and redacting costs and fees) to conduct a manual review of files.
District Attorney Walsh’s Reply
By letter dated August 4, 1998, district attorney Walsh stated:
Unfortunately, we are unable to help you with your request. Our records . . . list cases by defendant, docket numbers, etc. and by charges . . . There is no category for “municipal corruption” nor is there a computer entry which would indicate the occupation of a criminal defendant (i.e. municipal employee).
If there are any particular cases, docket numbers, etc. that we could help you with, we’d be more than happy to try.
(Emphasis in original.) Dembner responded in a letter datedAugust 14, 1998 which in substance is the same as the Albano letter to district attorney Conte. By letter datedAugust 17, 1998, district attorney Walsh stated:
Unfortunately again we are unable to help you with your request.
Our office prosecutes a [sic] estimated forty thousand cases per year. To conduct a search from 1993 through June 30, 1998 of more than a [sic] estimated two hundred thousand cases without a docket number, name, etc. would not be accurate. Again, if there are any particular case or cases, docket numbers, names in Bristol County that we could help you with, we’d be more than happy to give it a try.
District Attorney Sullivan’s Reply
By letter dated August 10, 1998, district attorney Sullivan stated that the information Dembner requested was protected under the CORI statute. The letter also states that records do not distinguish between cases based on a defendant’s occupation and that, therefore, Dembner’s request required “a hand search of every case for the last five years” at a substantial cost. On August 24, 1998, Attorney Albano sent a letter substantially the same as the letter sent to district attorney Conte.
District attorney Sullivan responded in a letter dated September 22, 1998. That letter cited the CORI statute as prohibiting release of information not contained in court papers. The letter also states that “[t]he determination of which, if any, cases contain information that we can release to you to comply with your request will require a case by case examination of our ■case flies involving the types of charges you list.” District attorney Sullivan estimated that the cost per case to review files to determine if the case is responsive to Dembner’s request and to determine what information can be released was $20 to $30. District attorney Sullivan stated that a search of his office’s computers, which took several hours, revealed 4,240 cases that appeared to fit within the statutory parameters of the amended request. The letter requested that plaintiff agree to pay the costs of searching, as well as reimburse district attorney Sullivan’s office for the search expenses already incurred.
District Attorney Bennett’s Reply
By letter dated August 17, 1998, district attorney Bennett stated: “the District Attorney denies your request for this information.” The letter states that the information is protected by CORI, and that the requested search would be “unduly burdensome” because a case-by-case search would be “extremely time consuming and expensive.” Attorney Albano responded as in the case of district attorney Conte, by letter dated August 24, 1998. District attorney Bennett’s office replied by letter dated September 3, 1998. This letter states that the narrowed request did not eliminate the need to review each file manually, and that the request that prosecutors be queried as to their recollections of municipal corruption prosecutions “exceeds the scope of what information is a public record.” It notes that a manual review of about 150,000 files would be required and their release would be subject to CORI limitations.
District Attorney Burke’s Reply
In response to Dembner’s original letter, a representative of district attorney Burke’s office spoke by telephone with Dembner and described, based on inquiry *358 made of the staff, four municipal corruption cases that the office had prosecuted in the preceding five years. However, the representative would not provide docket numbers or case-identifying information. The representative maintained that disclosure of information Dembner sought would reveal information protected by the CORI statute. By subsequent letter, district attorney Burke stated: “No matter how we look at the matter, we conclude that, quite aside from the massive administrative effort fulfilling your request would require (the cost of which would have to be passed on to you), [the CORI statute] forbids dissemination of exactly the kind of information you seek.” After discussing a legal argument, the letter concludes: “Accordingly, your request for information is denied.”
The defendants’ replies to the Globe’s response resulted in the Globe filing this action.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). On matters for which the moving party does not bear the burden of proof at trial, the moving party may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the moving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass at 17. In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56(c). The court should not weigh evidence, assess credibility, or find facts and may only consider undisputed material facts and apply the law to them. See Kelley v. Rossi, 395 Mass. 659, 663 (1985).
Defendants argue that the information requested is protected by the CORI statute and that under the public records law they are not required to make the inquiry plaintiff seeks. Plaintiff argues that docket numbers in criminal cases are public records. Plaintiff also argues that the CORI statute does not prohibit disclosure of the requested information and, if it does, that prohibition fails under the First Amendment to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights. Finally, Plaintiff argues that where, as here, the cost of full compliance with the request is financially prohibitive the public records law requires defendants to make inquiry of knowledgeable staff members to determine if any documents responsive to the request are readily available.
Plaintiff has waived Count v. of its complaint, which challenged the reasonableness of fees some defendants stated compliance with plaintiff s request would require.[9] At this juncture, plaintiff seeks a declaration that:
1. Docket numbers of criminal cases are public records;
2. those docket numbers are exempted from the restrictions placed on CORI or, if not, the portion of the CORI statute prohibiting disclosure is unconstitutional; and
3. the public records law requires custodians of public records to make inquiry of knowledgeable staff members to determine whether documents responsive to a public records request are known to exist.
At the summary judgment hearing I asked plaintiffs counsel to state precisely what information plaintiff now seeks. Counsel responded that plaintiff now seeks the docket numbers (and associated courts) for municipal corruption cases prosecuted under the statutes enumerated in the Albano letter for the five-year period specified in that letter. This decision is based on that representation.
Whether Information Sought Constitutes Public Records or CORI
Although plaintiff attempts to segregate the public records and CORI analyses, the statutory scheme forces an integrated analysis. Whether the information plaintiff seeks is a public record depends on an analysis of the CORI statute.
The public records statute, G.L.c. 66, §10, requires public access to certain records and documents in the possession of public officials. Section 10(a) provides:
Every person having custody of any public record . . . shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee.
Under G.L.c. 4, §7, Twenty-sixth, the term “public records” means:
all books, papers, maps, photographs, recorded tapes, financial statements, statistical tabulations, or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency . . . of the commonwealth . . . unless such materials or data fall within the following exemptions . . .
*359 “The statute is broad in scope.” General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 801 (1999). Its fundamental purpose is “to ensure public access to government documents.” Id. The presumption is in favor of disclosure, and “the statutory exemptions must be strictly and narrowly construed." Id. at 801 -02.
Thus, the public records law mandates disclosure of public records. However, exempted from the definition of the term “public records” are records “specifically or by necessary implication exempted from disclosure by statute.” G.L.c. 4, §7, Twenty-sixth(a). Records falling within this (or any of the other enumerated exemptions) are, by definition, not public records. The burden is on the custodian of the record “to prove with specificity the exemption which applies.” G.L.c. 66, § 10(c). See General Elec. Co., 429 Mass. at 801.
Turning to the CORI statute, G.L.c. 6, §167 defines criminal offender record information (i.e., CORI) as:
records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pretrial proceeding, other judicial proceedings, sentencing, incarceration,. rehabilitation, or release. Such information shall be restricted to that recorded as the result of the initiation of criminal proceedings or any consequent proceedings related thereto. [CORI] shall not include evaluative information, statistical and analytical reports and flies in which individuals are not directly or indirectly identifiable, or intelligence information . . . [CORI] shall not include information concerning any offenses which are not punishable by incarceration.
Dissemination of CORI is governed by G.L.c. 6, §172:
Except as otherwise provided . . ., [CORI]. .. shall be disseminated .. . only to (a) criminal justice agencies; (b) such other agencies and individuals required to have access to such information by statute . . ., and (c) any other agencies and individuals where it has been determined that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy.
That section also lists four types of records which, notwithstanding the provisions of that section, “shall be public records”:
(1) police daily logs, arrest registers, or other similar records compiled chronologically, provided that no alphabetical arrestee, suspect, or similar index is available to the public, directly or indirectly; (2) chronologically maintained court records of public judicial proceedings, provided that no alphabetical or similar index of criminal defendants is available to the public, directly or indirectly; (3) published records of public court or administrative proceedings, and of public judicial administrative or legislative proceedings; and (4) decisions of the parole board as provided in [G.L.c. 127, §130],
Thus, whether the information plaintiff seeks is a public record depends on whether that information falls within the quoted exemption from the definition of the term “public records.” If that information is CORI, it is not a public record,[10] unless it falls within one of the four enumerated types of records. If the record is within one of those four classes, that record is by definition a “public record” “notwithstanding” that it is also CORI.
In this case, there is no dispute that the information plaintiff seeks constitutes “documentary materials or data . . . made or received by any officer or employee of any agency of the commonwealth.” The parties also agree that the information sought is CORI. The issue thus becomes whether the information fits within one of the four types of records which G.L.c. 6, §172 declares to be public records. Plaintiff argues that the information fits within the first three categories. For clarity, I refer to this portion of §172 as the “CORI public records provision” and records falling within this provision as “CORI public records.”
As limited by plaintiff s representation at the hearing (described above), plaintiff now seeks docket numbers, but only those correlated with non-defendant-specific informationmunicipal corruption cases prosecuted under certain statutes for a certain date range. Thus, the question is not, as plaintiff argues, whether docket numbers in the abstract are public records, but whether docket numbers correlated with specific information are public records.
Plaintiff does not specifically argue that the records requested fit within any of the three categories of the CORI public records. Rather, plaintiff presents a more generalized approach to the issue.[11]1 first note that it is unlikely that the desired records fit specifically within any one of the CORI public records provisions. The first' appears to relate to police records, such as an arrest log. The second consists of court records. While docket numbers are assigned by the court, through the clerk’s office, a district attorney’s records are not court records.[12], [13] Finally, the records sought do not appear to be “published records” of court proceedings. A though the records can be said to have been “published” in the limited sense that the information they contain likely appeared on a daily criminal list at a court on one or more occasions, that cannot be what the statute, by its terms, means. The statute earlier twice uses the phrase “available to the public.” The term “published” thus must refer to material printed or disseminated to the public in some manner broader than being available in a courthouse for some time on a particular day.
This issue, however, cannot be approached in such a mechanical fashion because of the statutory presumption that a record is public and the Supreme Judicial Court’s holding that exemptions from the definition of “public records” must be strictly and narrowly construed. Seen in this light, while the re *360 cords plaintiff seeks do not fall specifically within any of these three categories, I find and rule that defendants have not sustained their burden of demonstrating that the records are not public records. The records plaintiff seeks are similar to those three categories of CORI public records: docket numbers are issued chronologically; they are provided by the court; they relate to public court proceedings; and docket numbers related to charged offenses are generally available to the public in daily lists in courthouses.
This result also is consistent with the concerns of the CORI statute and with rules of statutory construction. The purpose of the CORI statute is to protect the privacy and the security of persons with a criminal record. New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 413-14 (1979). See also Commonwealth v. Vickey, 381 Mass. 762, 765 (1980); Bellin v. Kelley, 48 Mass.App.Ct. 573, 576-77, rev. granted, 431 Mass. 1104 (2000). It seeks “to balance potential conflicts between the demands of individual rights of privacy and the need to make certain information available to the public.” St. 1977, c. 841, amending G.L.c. 6, §172. Of particular concern are records which aggregate information concerning the criminal history of an individual. New Bedford Standard-Times Publ. Co., 377 Mass. at 415. In contrast, plaintiff does not seek information pertaining to particular individuals’ criminal records. Rather, plaintiff seeks to investigate particular offenses. Said differently, while plaintiff seeks only docket numbers correlated with other information, none of that information is defendant-specific. Rather, the correlating data are offense-specific. The CORI statute is concerned with dissemination of information to persons seeking information about specific defendants, rather than specific offenses.[14]
It is a general rule of statutory interpretation that “an exception from the coverage of a statute is ordinarily to be construed narrowly so as to prevent the purposes of the statute from being rendered ineffective.” Singer Friedlander Corp. v. State Lottery Comm'n, 423 Mass. 562, 565 (1996), quoting Martin v. Rent Control Bd. of Cambridge, 19 Mass.App.Ct. 745, 747 (1985). See also LeClair v. Norwell, 430 Mass. 328, 336 (1999). Defendants argue that the plain language of the CORI public records provision should not be expanded to include a category of documents that does not fit within the specific provisions. This is especially true, defendants argue, because the Legislature has referred to records of specific entities (the police, the courts and the parole board), and district attorneys’ offices are not among the entities. However, as I read the statutes, the overarching principles are contained in the public records law’s presumption that a record is public. See Singer Friedlander Corp., 423 Mass. at 566 (legislative policy usually contained within the general rule, not the proviso). The CORI public records provision is not an exception from the CORI statute, because the statute does not declare these records not to be CORI. Rather, it is a declaration that those categories of records shall be considered public records. More importantly, CORI is itself an exception to the public records law and, to the extent consistent with the statute’s purposes, it is an exception to be construed narrowly. My holding that the requested documents fit within the CORI public records provision thus is consistent with the general principle that exceptions are construed narrowly, and with the public records law’s statutory directive that government records are presumed to be public. Accord Boston Herald, Inc. v. Sharpe, 432 Mass. 593, 603-12 (2000) (discussing importance of public access to court records in criminal cases).
It is of no benefit to defendants to argue, as they do, that plaintiffs request would require defendants to create a record that currently does not exist. It is true that there is no evidence that defendants at this time have, in written form, precisely what plaintiff seeks. It is also true, however, that G.L.c. 4, §7, Twenty-sixth includes in its definition of “public records” “data, regardless of physical form or characteristics.” Moreover, G.L.c. 66, § 10(a) requires the custodian of a public record to permit inspection of a public record “or any segregable portion . . . which is an independent public record.” Finally, G.L.c. 6, §167 defines CORI to include “records and data in any communicable form.” From these statutes it is apparent that defendants are not being compelled to create a record that has not yet been created. The public records exist; the information is stored electronically in fields. Using a computer program to translate the information in those fields into a comprehensible form on paper does not involve “creation” of a new record. Cf. Forsham v. Harris, 445 U.S. 169, 185-86 (1980) (ordering Federal agency to exercise right of access to documents held by private grantee would be compelling agency to “create” record); National Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975) (ordering Federal agency to create “explanatory material" would be to require agency to create documents). Alternatively, as plaintiff argues, the public records sought are the docket numbers written on defendants’ physical files. Responding to plaintiffs request, defendants could provide a document from each relevant file, redacted as to all- except the docket number. Printing a list of only docket numbers is, thus, merely a more convenient way of accomplishing the same result.
In sum, I rule that the records plaintiff seeks, while CORI, also are public records subject to the public records law. Because of this result, I need not reach plaintiffs constitutional arguments.[15]
Whether the Public Records Law Requires Custodians to Make Inquiry of Staff
Plaintiff argues that, assuming the cost of providing a complete response to its request is prohibitive, the public records law requires defendants to query staff whether they are aware of any documents responsive *361 to plaintiffs request which are therefore readily available at less cost.[16] In making this argument, plaintiff relies on 950 Code Mass. Regs. §32.05(4), which provides:
Description of Requested Records. Any person seeking access to a public record or any portion thereof shall provide a reasonable description of the requested record to the custodian so that he or she can identify and locate it promptly. A person shall not be required to make a personal inspection of the record prior to receiving a copy of it. A custodian's superior knowledge of the contents of a governmental entity’s files shall be used to assist in promptly complying with the request.
(Emphasis added.)
No party cites any case discussing the significance of the emphasized language, and this court’s research has found none. The statute and accompanying regulations would appear to impose a standard of reasonableness on the custodian of a public record. This standard is consistent with Federal cases interpreting the Freedom of Information Act, 5 U.S.C. §552. See, e.g., Grand Cent. Partnership, Inc. v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999); Campbell v. United States Dep’t of Justice, 164 F.3d 20, 27 (D.C.Cir. 1999); Maynard v. Central Intelligence Agency, 986 F.2d 547, 559 (1st Cir. 1993). The scope of a search is limited by the nature of the request made. See Maynard, 986 F.2d at 560. Thus, a search must be “reasonably calculated to discover the requested documents.” Id. at 559, quoting Safecard Servs., Inc. v. Securities & Exch. Comm’n, 926 F.2d 1197, 1201 (D.C.Cir. 1991).
Applying that standard here leads me to conclude that a request for an inquiry of knowledgeable current[17] staff could be reasonable when the cost of an alternative search and the time involved is prohibitive. [18] My conclusion is buttressed by the fact that the district attorney for the Northern District used such an approach in responding to the Globe’s inquiry.
A request for staff inquiry, if its terms are sufficiently defined, is in essence a request for documents. Recollections of staff, like a field search performed on a computer, serve to isolate and identify documents responsive to a request. Here, defendants acknowledge they possess an enormous number of documents potentially responsive to plaintiffs request. When a request for documents subject to the public records law is made, custodians necessarily must turn to some form of an index system to locate relevant documents. One way defendants can perform the search plaintiff requests is by the conventional methodperforming a computer field search and examining files individually to determine if they are responsive to the request. Another logical way of performing the search is the alternative plaintiff suggeststo queiy knowledgeable staff as to cases fitting within specified parameters. Each method has obvious deficiencies. The computer search results in a costly and time-consuming manual search. Querying staff may not reveal all relevant cases.
Whether either search is reasonable is a determination to be made initially by each defendant district attorney, not by this court. Such a determination depends, among other things, on the size of the staff, the manner of organization of the office (e.g., is there a white collar unit?), the degree of intrusion of the inquiry, and the time it would take staff to respond to the inquiry versus the time it would take for an alternative search.
Although plaintiff, in its motion for summary judgment (but not in its complaint) seeks a declaration that the public records law and accompanying regulations require staff inquiiy, I decline to issue such a declaration. On the record before me, I cannot make such a determination.
ORDER
For the foregoing reasons, plaintiffs motion for summary judgment is ALLOWED, and defendants’ cross motions are DENIED. A declaration shall enter that docket numbers of criminal cases prosecuted in public judicial proceedings, not correlated with defendant-specific information, are public records under G.L.c. 4, §7, Twenty-sixth, that they are subject to mandatory disclosure under G.L.c. 66, §10, and that their disclosure is not prohibited by the CORI statute, G.L.c. 6, §§167 et seq.

 With the exception of district attorney Walsh, defendants have joined in a single summary judgment motion. Walsh has filed a separate motion.

 PROMIS is an acronym for “Prosecutor On-line Management Information System.”

 The district attorneys for the Norfolk District, the Berkshire District and the Northwestern District were originally named as defendants, but plaintiff has since resolved its dispute with them. Stipulations of dismissal without prejudice have been filed as to these district attorneys.

 Reference in this decision to a particular district attorney is to the office, not the individual.

 The letter is essentially the same letter Albano sent to the other district attorneys. References in this decision to the “Albano letter” are to these letters.

 The statutes for the relevant time provided as follows. Chapter 268A generally governs the conduct of public officials and public employees. Sections 2 and 3 of that chapter criminalize the giving of corrupt gifts to, and the receipt of such gifts by, government employees, promises to corrupt testimony and corruption of witnesses. Chapter 55 generally regulates campaign expenditures and contributions. Chapter 266, §51 governs embezzlement by municipal officers; Section 67A governs fraudulent procurement of supplies, services or construction within the jurisdiction of State departments, agencies or public instrumentalities; Section 67B governs presentation of false claims to the Common *362 wealth; Section 67C governs false entries in records of capital facility construction projects, Chapter 266, §30 is the larceny statute. Chapter 268, §9A prohibits solicitations for testimonial dinners for non-elected persons in law enforcement or related fields. Chapter 149, §§44A-44J relate to fair competition for bidders on public construction projects. Chapter 267, §1 governs forgery or counterfeiting of public records; Section 8 governs forgery or counterfeiting of bank bills or promissory notes. Chapter 62C, §73 punishes tax evasion and related offenses.

 Plaintiff states it did so to
eliminate! ] any potential factual dispute that might otherwise have precluded . . . summary judgment on its remaining requests for declaratory relief that the docket numbers of criminal cases are public records . . . and that the defendants were obligated to make inquiry of their staffs to determine if responsive documents were known to exist and therefore could have been readily made available at little or no cost.
Pl.’s Mem. in Opp’n to Defs.’ Mot. Summ. Judgmt. at 2 n.l. See also Pl.’s Response to Defs.' Rule 9A Stmnt. at par. 2. Plaintiff repeated this stipulation of waiver at the hearing on this motion.

 Because the CORI statute defines those four enumerated classes of records as “public records,” it follows that CORI not within those four classes are, by virtue of G.L.c. 4, §7, Twenty-sixth (a), not public records.

 This appears to be the approach used (albeit not expressly) in Globe Newspaper Co. v. Conte, Suffolk Super. Ct. Civil No. 95-2743A (Mem. and Order on Pl.’s Mot. for Preliminary Injunction dated July 28, 1995) (Barrett, J.). See also Globe Newspaper Co. v. Evans, Suffolk Super. Ct. Civil No. 97-4102E, 7 Mass. L. Rptr. 239 (Mem. and Order on Pl.’s Mot. for Preliminary Injunction dated Nov. 26, 1997) (Grabau, J.) (police records stored in electronic filing system, including incident reports, were within CORI public records provision, because similar to police daily logs or arrest registers).

 In the record is a letter from Peter Larkowich, then General Counsel for the Criminal History Systems Board. The letter, dated August 2, 1989, is to the editor of the Boston Globe’s Spotlight Team. In the letter, Larkowich states his opinion that it would not violate the CORI statute for district attorneys to release criminal docket numbers and associated courts for a certain category of cases, because those are “chronologically maintained court records of public judicial proceedings.” Larkowich reasons as follows. While a court is the primary keeper of these records, the district attorneys received the records in the course of their duties. Under the public records statute, G.L.c. 66, §10, aperson need only have “custody” of a public record to be subject to the statute’s mandates. Thus, it is immaterial that the request was directed toward the district attorneys rather than the court clerks. Ex. B to Ex. 1 of Affidavit of Counsel (aff. dated Feb. 12, 2001).
Here, there is no dispute that the records plaintiff seeks fit within the general definition of “public records." The question is whether the records are exempted from that definition, which depends on whether they fit within the CORI public records provision. Larkowich’s letter appears to assume that the records in the district attorneys’ files are “court records” because they are received and maintained in the course of the district attorneys’ duties. Even if Larkowich is correct, the same result is reached in this case.
Also in the record is an affidavit of the current general counsel to the Criminal History Systems Board, who states that she has found no document indicating that the Criminal History Systems Board reviewed the 1989 request or authorized Larkowich’s opinion, and states that in her opinion Larkowich’s interpretation is inaccurate. Aff. of Veronica M. Madden (dated June 1, 1995).

 None of the parties has addressed cases holding that the public records law does not apply to court records. New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 407 (1979); Ottaway Newspapers, Inc. v. Appeals Court, 372 Mass. 539, 546 (1977); Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 157-58 (1945); Cowley v. Pulsifer, 137 Mass. 392, 396-97 (1884); Peckham v. Boston Herald, Inc., 48 Mass.App.Ct. 282, 286 n.6 (1999).

 In this sense, defendants are correct that it is insufficient to say that plaintiff is entitled to the docket numbers he seeks because docket numbers are chronologically maintained records. Rather, the key is the qualifying datawhat information plaintiff seeks to correlate against the docket numbers. A request for all docket numbers involving prosecution of a particular individual would be a case different from this case.

 Some of plaintiffs arguments are based on Globe Newspaper Co. v. Fenton, 819 F.Sup. 89 (D.Mass. 1993). That case held that “nothing in the CORI statute may be held to impose liability for the communication of information otherwise available at the time of the communication in a judicial record to which the public has access.” Id. at 100. Fenton also declared the CORI statute unconstitutional “insofar as it denies the public access to court-maintained alphabetical indices of defendants in closed criminal cases without an individualized judicial determination on an adequate record that a particular defendant’s name must be sealed or impounded to serve a compelling state interest.” Id. at 100-01. Defendants argue that nothing in Fenton compels district attorneys to disclose information. See id. at 100 (“persons may choose for their own reasons not to disseminate the [CORI]”). Thus, according to defendants, the result of Fenton is to make disclosure of requested CORI discretionary.
Although the issues in Fenton differ from those in New Bedford Standard-Times Publishing Co., 377 Mass. 404, Fenton questioned the holding of New Bedford Standard-Times Publishing Co. in light of subsequent United States Supreme Court case law. The SJC has recently cited Fenton for the proposition that “records of conviction are public records that are constitutionally required to be public.” Roe v. Attorney General, 434 Mass. 418 (2001).

 As noted, plaintiff has waived its claim as to the unreasonableness of the fees some defendants assert would be required. Plaintiff says it has waived this claim because it seeks a declaration that the “collective recall” approach is required where a conventional search is financially impractical.

 I construe plaintiff as referring to a request only for an inquiry of current staff. A request for an inquiry of former staff members would clearly be unreasonable.

 defendants have not argued that the term “municipal corruption” is too vague to have meaning. Defendants have only argued that the term cannot be used in a computer search, thus requiring a manual search. That defendants agree a manual search can be performed indicates defendants can, with time and effort, analyze cases to make this determination. Defendants advance no other reason that identifying a case as one involving municipal corruption is not possible, practicable or appropriate.
Defendant Walsh’s argument that the “parameters of [plaintiffs] request. . . are too vague and imprecise to constitute a proper request” is an argument that the term “municipal corruption” cannot be used as a computer search term.